M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
*aberry@justice4you.com*
*gharoutunian@justice4you.com*
*bjack@justice4you.com*

William B. Federman (*pro hac vice* forthcoming)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
-and-
212 W. Spring Valley Road
Richardson, Texas 75081
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
*wbf@federmanlaw.com*

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA SORENSEN, and all similarly situated individuals,<br><br>                    Plaintiff,<br><br>v.<br><br>23ANDME, INC.,<br><br>            Defendant. | Case No.:<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

Plaintiff Brianna Sorensen ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant 23andMe, Inc. ("23andMe" or "Defendant") based on personal knowledge and on information and belief from the investigation of counsel, and alleges and states as follows:

## I.   **INTRODUCTION**

1.      Plaintiff brings this class action against 23andMe for its failure to properly secure and safeguard Plaintiff's and other similarly situated 23andMe customers' sensitive information.

2.      Defendant is a biotechnology company that sequences specific locations in an individual's genome known to differ between people in order to create personalized genetic reports on ancestry, traits, genetic health risks, carrier status (risks of genetic diseases of offspring), and pharmacogenetics (likelihood of certain side effects to pharmaceuticals). Defendant has more than 14 million customers worldwide. [1]

3.      On or about October 6, 2023, Defendant announced, via its website, that "23andMe customer profile information that they opted into sharing through our DNA Relatives feature, was compiled from individual 23andMe.com accounts without the account users' authorization" (the "Data Breach").[2]

4.      The Personal Identifying Information that Defendant failed to secure includes Plaintiff and Class Members' personally identifiable information ("PII") and protected health information ("PHI"), which consists of: names, sex, dates of birth, genetic results, profile photos, and geographic location (collectively, "Private Information").

5.      As a condition to receiving Defendant's services, former and current customers are required to entrust Defendant with sensitive, non-public PII and PHI, without which Defendant

---

[1] *See* DNA Genetic Testing For Health, Ancestry And More – 23andMe (last visited Oct. 26, 2023).

[2] *See* https://blog.23andme.com/articles/addressing-data-security-concerns (last visited Oct. 26, 2023).

could not perform its regular business activities. On information and belief, Defendant retains this information for at least many years and even after the consumer relationship has ended.

6.     By obtaining, collecting, using, and deriving a benefit from the PII and PHI of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

7.     In the Notice posted to Defendant's website, 23andMe states:

> We recently learned that certain 23andMe customer profile information that they opted into sharing through our DNA Relatives feature, was compiled from individual 23andMe.com accounts without the account users' authorization.

> After learning of suspicious activity, we immediately began an investigation. While we are continuing to investigate this matter, we believe threat actors were able to access certain accounts in instances where users recycled login credentials—that is, usernames and passwords that were used on 23andMe.com were the same as those used on other websites that have been previously hacked.

> We believe that the threat actor may have then, in violation of our Terms of Service, accessed 23andMe.com accounts without authorization and obtained information from certain accounts, including information about users' DNA Relatives profiles, to the extent a user opted into that service.[3]

8.     Absent from Defendant's Notice is any indication of whether Defendant was able to contain or end the cybersecurity threat, leaving victims to fear that their PII and PHI is still insecure, and Defendant fails to state how the breach occurred.

9.     Defendant failed to adequately protect Plaintiff's and Class Members' PII and PHI—and failed to even encrypt or redact this highly sensitive information. This unencrypted PII and PHI was compromised due to Defendant's negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII and PHI because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

10.     In fact, there are reports that this was a targeted attack and Plaintiff's and Class Members' data is already for sale on the dark web:

---

[3] *Id.*

CLASS ACTION COMPLAINT

The stolen user data seems to be part of a targeted attack focused on Ashkenazi Jews. The hacker responsible for posting the sample data on BreachForum claimed it contained a staggering one million data points exclusively pertaining to this group. Additionally, data of hundreds of thousands with Chinese heritage has been disclosed.

The hacker is currently peddling 23andMe data profiles on the underground market, pricing them between $1 to $10. Noteworthy figures like Mark Zuckerberg, Elon Musk, and Sergey Brin are among the individuals whose profiles have been compromised. These profiles encompass basic information such as names, genders, birth years, and some additional genetic data.[4]

11.    Plaintiff brings this action on behalf of all persons in the United States whose PII and PHI was compromised as a result of Defendant's failure to: (i) adequately protect the PII and PHI of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII and PHI using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts at least to negligence and violates federal and state statutes.

12.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures and ensure those measures were followed by its IT vendors to ensure that the PII and PHI of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII and PHI of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party.

13.    Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

---

[4] *See* Charina Condinato "*Stolen User Data from 23andMe Users Emerges on BreachForum*," October 8, 2023 *available at*: https://www.pelhamplus.com/us-news/stolen-user-data-from-23andme-users-emerges-on-breachforum/#google_vignette (last visited Oct. 26, 2023).

14.    Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) lost or diminished value of PII and PHI; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI.

15.    Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## II.    THE PARTIES

16.    Plaintiff Brianna Sorensen is a citizen and a resident of Chicago, Illinois.

17.    Defendant is a Delaware corporation with its principal place of business located at 223 N. Mathilda Ave., Sunnyvale, CA 94086.

## III.    JURISDICTION AND VENUE

18.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

19.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, many of whom reside outside the state of California and have different citizenship from 23andMe. Thus, minimal diversity exists under 28 U.S.C. §1332(d)(2)(A).

20.    This Court has jurisdiction over Defendant because its principal place of business is located in this District.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant has harmed Class Members residing in this District.

## IV.     FACTUAL ALLEGATIONS

22.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

23.     Defendant is a biotechnology company that uses customers' DNA to complete a comprehensive ancestry breakdown.[5]

24.     As a condition of receiving its services, 23andMe requires that its 23andMe customers, including Plaintiff and Class Members, entrust it with sensitive personal information, including perhaps the most highly sensitive category of personal information: genetic information.

25.     The information held by Defendant in its computer systems or those of its vendors at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

26.     Upon information and belief, Defendant made promises and representations to its customers, including Plaintiff and Class Members, that the PII and PHI collected from them as a condition of obtaining services at Defendant would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

27.     For example, Defendant's Privacy Policy states: "We encrypt all sensitive information and conduct regular assessments to identify security vulnerabilities and threats."[6]

---

[5] *See* https://www.23andme.com/dna-ancestry/?utm_source=google&utm_medium=search_&utm_campaign=US_evergreen_sales_prspping&gclid=EAIaIQobChMIpb3kpuCWggMVgzrUAR2WsAeHEAAYASAAEgJq8fD_BwE&gclsrc=aw.ds (last visited Oct. 27, 2023).
[6] *See* https://www.23andme.com/privacy/ (last visited Oct. 27, 2023).

Further, Defendant's Privacy Policy also states: "protecting your privacy has been our number one priority."[7]

28.     Plaintiff and Class Members provided their PII and PHI to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

29.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI. Plaintiff and Class Members relied on the sophistication of Defendant to keep their PII and PHI confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their PII and PHI and demand security to safeguard their Private Information.

30.     Defendant had a duty to adopt reasonable measures to protect the PII and PHI of Plaintiff and Class Members from involuntary disclosure to third parties and to audit, monitor, and verify the integrity of its IT vendors and affiliates. Defendant has a legal duty to keep its customers' PII and PHI safe and confidential.

31.     Defendant had obligations created by the FTC Act, HIPAA, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their PII and PHI confidential and to protect it from unauthorized access and disclosure.

32.     Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' PII and PHI. Without the required submission of PII and PHI, Defendant could not perform the services it provides.

33.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

---

[7] *Id.*

*The Data Breach*

34.     On or around October 6, 2023, 23andMe posted a notice to its website concerning the Data Breach ("Notice"), which states:

> We recently learned that certain 23andMe customer profile information that they opted into sharing through our DNA Relatives feature, was compiled from individual 23andMe.com accounts without the account users' authorization.

> After learning of suspicious activity, we immediately began an investigation. While we are continuing to investigate this matter, we believe threat actors were able to access certain accounts in instances where users recycled login credentials—that is, usernames and passwords that were used on 23andMe.com were the same as those used on other websites that have been previously hacked.

> We believe that the threat actor may have then, in violation of our Terms of Service, accessed 23andMe.com accounts without authorization and obtained information from certain accounts, including information about users' DNA Relatives profiles, to the extent a user opted into that service.[8]

35.     Absent from the Notice are any details explaining the cause of the Data Breach, the vulnerabilities exploited, or any remedial measures undertaken to ensure a breach does not occur again. To date, this critical information has not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their PII and PHI remain protected.

36.     Defendant's Notice is deficient because it fails to inform, with any degree of specificity, Plaintiff and Class Members of any critical facts about the Data Breach. Without these facts, Plaintiff and Class Members are unable to mitigate the harms resulting from the Data Breach.

37.     In the Notice, Defendant fails to offer to cover any identity monitoring services. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff and Class Members' PII and PHI. Plaintiff and Class Members will be forced to pay out of pocket for necessary identity monitoring services.

---

[8] *See* https://blog.23andme.com/articles/addressing-data-security-concerns (last visited Oct. 27, 2023).

38.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed. Moreover, Defendant failed to exercise due diligence in selecting its IT vendors or deciding with whom it would share sensitive PII and PHI.

### *The Genetic-Testing Industry is Particularly Susceptible to Data Breaches*

39.     Defendant was on notice that companies in the genetic-testing industry are susceptible targets for data breaches.

40.     Data thieves regularly target companies like Defendant due to the highly sensitive information in their custody. Defendant knew and understood that unprotected PII and PHI is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

41.     In the third quarter of the 2023 fiscal year alone, 7333 organizations experienced data breaches, resulting in 66,658,764 individuals' personal information being compromised.[9]

42.     In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the PII and PHI that they collected and maintained would be targeted by cybercriminals.

43.     As a custodian of PII and PHI, Defendant knew, or should have known, the importance of safeguarding the PII and PHI entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems, or those of its vendors, were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

---

[9] *See* https://www.idtheftcenter.org/publication/q3-data-breach-2023-analysis/ (last visited Oct. 27, 2023).

CLASS ACTION COMPLAINT

44.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII and PHI of Plaintiff and Class Members from being compromised.

45.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

46.     As a genetic-testing company in possession of its customers' and former customers' PII and PHI, Defendant knew, or should have known, the importance of safeguarding the PII and PHI entrusted to them by Plaintiff and Class Members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class Members as a result of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

### *Defendant Failed to Comply with HIPAA*

47.     Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

48.     Defendant's Data Breach resulted from a combination of insufficiencies that indicate 23andMe failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from Defendant's Data Breach that 23andMe either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiff's and Class Members' PHI.

49.     Plaintiff's and Class Members' PII and PHI compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

50.     45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

51.     45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

52.     Plaintiff's and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

53.     Plaintiff's and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

54.     Based upon Defendant's Notice to Plaintiff and Class Members, 23andMe reasonably believes that Plaintiff's and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

55.     Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

56.     23andMe reasonably believes that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

57.     Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

58.     Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

59.     Defendant reasonably believes that Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

60.     It is reasonable to infer that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

61.     Upon information and belief, the unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

62.     After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiff and Class Members in this case, to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

63.     In addition, Defendant's Data Breach could have been prevented if Defendant had implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

64.     Defendant's security failures also include, but are not limited to:

        a.      Failing to maintain an adequate data security system to prevent data loss;

        b.      Failing to mitigate the risks of a data breach and loss of data;

        c.      Failing to ensure the confidentiality and integrity of electronic protected health information 23andMe creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

        d.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information

CLASS ACTION COMPLAINT

to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.      Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.      Failing to identify and respond to suspected or known security incidents;

g.      Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.      Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.      Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.      Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

k.      Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

65.     Because Defendant has failed to comply with HIPAA, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is also necessary to ensure Defendant's approach to information security is adequate and appropriate going forward. 23andMe still maintains the PHI and other highly sensitive PII of its current and former customers, including Plaintiff and Class Members. Without the supervision of the Court through injunctive relief, Plaintiff's and Class Members' PII and PHI remains at risk of subsequent data breaches.

***Defendant Failed to Comply with FTC Guidelines***

66.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

67.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

68.     The FTC further recommends that companies not maintain PII and PHI longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

69.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

70.     As evidenced by the Data Breach, 23andMe failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its vendor's data security practices. 23andMe's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

71.     23andMe was at all times fully aware of its obligation to protect the PII and PHI of its customers yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### *Defendant Failed to Comply with Industry Standards*

72.     Industry best practices that should be implemented by institutions dealing with sensitive PII and PHI, like 23andMe, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

73.     Other best cybersecurity practices that are standard at large institutions that store PII and PHI include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

74.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

75.    Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### Defendant Breached its Duty to Safeguard Plaintiff's and Class Members' PII and PHI

76.    In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII and PHI of Class Members.

77.    23andMe breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data and failed to audit, monitor, or ensure the integrity of its vendor's data security practices. 23andMe's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

   a.    Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

   b.    Failing to adequately protect customers' PII and PHI;

   c.    Failing to properly monitor its own data security systems for existing intrusions;

   d.    Failing to audit, monitor, or ensure the integrity of its vendor's data security practices;

   e.    Failing to sufficiently train its employees and vendors regarding the proper handling of its customers PII and PHI;

   f.    Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

CLASS ACTION COMPLAINT

g.   Failing to adhere to industry standards for cybersecurity as discussed above; and

h.   Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' PII and PHI.

78.   Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII and PHI by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

79.   Had 23andMe remedied the deficiencies in its information storage and security systems or those of its vendors and affiliates, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential PII and PHI.

### Defendant Should Have Known Cybercriminals Target PII and PHI to Carry Out Fraud and Identity Theft

80.   The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[10] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

81.   Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity

---

[10] *See FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on Oct. 27, 2023).

thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

82.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

83.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

84.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' PII and PHI to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

85.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a

freeze on their credit, and correcting their credit reports.[11] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

86.    PHI is also especially valuable to identity thieves. As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[12]

87.    Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

88.    While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[13]

89.    PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

90.    Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[14]

---

[11] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited Oct. 27, 2023).

[12] *See* Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited on Oct. 27, 2023).

[13] *See* Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at*: https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited on Oct. 27, 2023).

[14] *See* Michael Ollove, "*The Rise of Medical Identity Theft in Healthcare*," Kaiser Health News, Feb. 7, 2014, *available at*: https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited on Oct. 27, 2023).

91.     The ramifications of Defendant's failure to keep its customers' PII and PHI secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

92.     The value of both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

93.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

94.     PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

95.     As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

### The Data Breach Increases Victims' Risk of Identity Theft

96.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come.

97.     The unencrypted PII and PHI of Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted PII and PHI may fall

---

[15] *See* "*Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*," GAO (June 2007), *available at* https://www.gao.gov/products/gao-07-737 (last visited Oct. 27, 2023)

into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members.

98.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal PII and PHI to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

99.    Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity—or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

100.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data Breaches can be the starting point for these additional targeted attacks on the victim.

101.    One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[16]

---

[16] Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm (last visited Oct. 30, 2023).

102.   With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

103.   The development of "Fullz" packages means here that the stolen PII and PHI from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII and PHI that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

104.   The existence and prevalence of "Fullz" packages means that the PII and PHI stolen from the data breach can easily be linked to the unregulated data (like driver's license numbers) of Plaintiff and the other Class Members.

105.   Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

106.   Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

***Loss of Time to Mitigate Risk of Identity Theft and Fraud***

107.   As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their PII and PHI was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

108.   Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result

of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and resecuring their own computer networks; and checking their financial accounts for any indication of fraudulent activity, which may take years to detect.

109.    These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[17]

110.    These efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[18]

111.    And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[19]

### *Diminution of Value of Plaintiff's and the Class Members' Private Information*

112.    PII and PHI is a valuable property right.[20] Its value is axiomatic, considering the

---

[17] *See* United States Government Accountability Office, GAO-07-737, "*Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*," (June 2007), https://www.gao.gov/new.items/d07737.pdf (last visited November 2, 2023).

[18] *See* Federal Trade Commission, Identity Theft.gov, https://www.identitytheft.gov/Steps (last visited Oct. 30, 2023).

[19] *See* "*Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*," at 2, U.S. GOV'T ACCOUNTABILITY OFFICE, June 2007, https://www.gao.gov/new.items/d07737.pdf (last visited Oct. 30, 2023) ("GAO Report").

[20] *See, e.g.*, Randall T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial asserts.

value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII and PHI have considerable market value.

113.    An active and robust legitimate marketplace for PII and PHI exists. In 2019, the data brokering industry was worth roughly $200 billion.[21]

114.    In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[22]

115.    Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[23]

116.    Conversely, sensitive Private Information can sell for as much as $363 per record on the dark web according to the Infosec Institute.[24]

117.    As a result of the Data Breach, Plaintiff's and Class Members' PII and PHI, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII and PHI is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

118.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information

---

[21] *See* https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last visited Oct. 30, 2023).

[22] *See* https://datacoup.com/ (last visited Oct. 30, 2023); and https://digi.me/what-is-digime/ (last visited Oct. 30, 2023)

[23] *See* Nielsen Computer & Mobile Panel, Frequently Asked Questions, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Oct. 30, 2023).

[24] *See* Ashiq Ja, Hackers Selling Healthcare Data in the Black Market, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited Oct. 30, 2023).

compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change, e.g., names and genetic information.

119.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

120.    The fraudulent activity resulting from the Data Breach may not come to light for years.

121.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class Members, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

122.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to thousands of individuals' detailed personal information, upon information and belief, and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

123.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiff and Class Members.

### *Plaintiff Brianna Sorensen's Damages*

124.    In order to become a customer of 23andMe, Plaintiff Sorensen was required to provide her PII and PHI to Defendant, including her name, sex, date of birth, geographic location, and information related to her unique genetic code.

125.    At the time of the Data Breach—on or before October 6, 2023—Defendant retained Plaintiff Sorensen's PII and PHI in its system.

126.    On or about October 11, 2023, Plaintiff Sorensen received an email informing her that her PII and PHI had been accessed or acquired during the Data Breach. The email notified her that, "[w]e recently learned that certain profile information — which a customer creates and

chooses to share with their genetic relatives in the DNA Relatives feature — was accessed from individual 23andMe accounts."[25]

127.   Subsequently, on October 24, 2023, Plaintiff Sorensen received another email from Defendant, which stated:

> "[a]fter further review, we have identified your DNA Relatives profile as one that was impacted in this incident. Specifically, there was unauthorized access to one or more 23andMe accounts that were connected to you through DNA Relatives. As a result, the DNA Relatives Account profile information you provided in this feature was exposed to the threat actor.[26]

128.   Plaintiff Sorensen is very careful about sharing her PII and PHI. Plaintiff stores any documents containing her PII and PHI in a safe and secure location. She has never knowingly transmitted unencrypted PII and PHI over the internet or any other unsecured source. Plaintiff would not have entrusted her PII and PHI to Defendant had she known of Defendant's lax data security policies.

129.   As a result of the Data Breach, Plaintiff Sorensen has experienced actual misuse of her Private Information in the form of fraudulent, unauthorized charges to her accounts, and forms of identity theft from unauthorized accounts opened in her name.

130.   First, On April 5, 2023, a Six-Flags Entertainment Corp. ticket was purchased through no action of her own, and $34.81 was charged to Plaintiff Sorensen's PayPal account.

131.   Next, On April 1, 2023, Plaintiff Sorensen received an email from Brownells.com confirming her order of a firearm and magazine (Glock 26 GEN 5 Subcompact 9mm Luger) despite never placing an order for such firearm.

132.   Further, on October 28, 2023, Plaintiff Sorensen received a purchase receipt from Wyty (an online cell phone lookup service) for a report she never purchased charging her $0.95. On October 30, 2023, Plaintiff Sorensen also received an email from Avon that an account had been opened up in her name through no action of her own.

---

[25] *See* attached hereto as **Exhibit 1** a true and correct copy of the email sent to Plaintiff on October 11, 2023.
[26] *See* attached hereto as **Exhibit 2** a true and correct copy of the email sent to Plaintiff on October 24, 2023.

133.    Finally, as a result of the Data Breach, Plaintiff Sorensen receives approximately 10-15 spam calls a week, daily spam text messages from unknown numbers, and over 50 spam emails.

134.    Plaintiff Sorensen was forced to deactivate her PayPal account, create a new email account because of the extensive spam messages, and open a new debit card.

135.    As a result of the Data Breach, and at the direction of Defendant's Notice, Plaintiff Sorensen made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach upon receiving the Notice Letter. Plaintiff has spent significant time dealing with the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

136.    Plaintiff Sorensen suffered actual injury from having her PII and PHI compromised as a result of the Data Breach including, but not limited to: (i) lost or diminished value of her PII and PHI; (ii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iii) invasion of privacy; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to her PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI.

137.    The Data Breach has caused Plaintiff Sorensen to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

138.    As a result of the Data Breach, Plaintiff Sorensen anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

CLASS ACTION COMPLAINT

139.    As a result of the Data Breach, Plaintiff Sorensen is at present risk and will continue to be at increased risk of identity theft and fraud, and other risks unique to genetic information theft, such as health insurance discrimination, for years to come.

140.    Plaintiff Sorensen has a continuing interest in ensuring that her PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## V.    CLASS ALLEGATIONS

141.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

142.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. The requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3), Plaintiff asserts all claims on behalf of a nationwide class and a Illinois sub-class defined as follows:

**Nationwide Class**
All individuals residing in the United States whose PII and PHI was disclosed in the Data Breach (the "Nationwide Class").

**Illinois Subclass**
All individuals residing in the State of Illinois whose PII and PHI was disclosed in the Data Breach (the "Illinois Subclass").

143.    Collectively, the Nationwide Class and Illinois Subclass shall be known as the "Class" unless otherwise specified herein.

144.    Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

145.    Plaintiff reserves the right to modify or amend the definition of the proposed Nationwide Class and/or Illinois Subclass, as well as add subclasses, before the Court determines whether certification is appropriate.

146.    The proposed Nationwide Class meets the requirements of Fed. R. Civ. P. 23(a),

(b)(1), (b)(2), (b)(3), and (c)(4).

147.   **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiff believes that the proposed Class includes thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records.

148.   **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

    **a.**   When Defendant actually learned of the Data Breach and whether its response was adequate;

    **b.**   Whether Defendant failed to adequately safeguard Plaintiff's and Class Members' PII and PHI;

    **c.**   Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their PII and PHI, and whether it breached this duty;

    **d.**   Whether Defendant breached its duties to Plaintiff and the Class as a result of the Data Breach;

    **e.**   Whether Defendant failed to provide adequate cyber security;

    **f.**   Whether Defendant knew or should have known that its computer and network security systems were vulnerable to cyber-attacks;

    **g.**   Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its company network;

    **h.**   Whether Defendant was negligent in permitting unencrypted PII and PHI of vast numbers of individuals to be stored within its network;

    **i.**   Whether Defendant was negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach to include former employees and business associates;

**j.** Whether Defendant breached implied contractual duties to Plaintiff and Class Members to use reasonable care in protecting their PII and PHI;

**k.** Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and Class Members;

**l.** Whether Defendant continues to breach duties to Plaintiff and Class Members;

**m.** Whether Plaintiff and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

**n.** Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief; and

**o.** Whether Defendant's actions alleged herein constitute gross negligence, and whether Plaintiff and Class Members are entitled to punitive damages.

**p.** Whether Defendant first obtained written authorization from Plaintiff and the Illinois Subclass before disclosing their genetic information.

**q.** Whether Defendant's conduct violates the Illinois Genetic Information Privacy Act, 410 ILCS 513, *et seq*. ("GIPA").

**r.** Whether Defendant's actions as described herein are unfair and oppressive and thus, in violation of the Illinois Consumer Fraud Act, 815 ILCS § 505, *et seq*. ("ICFA").

149. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the members of the Class sustained damages as a result of Defendant's uniform wrongful conduct. All had their PII and PHI compromised as a result of the Data Breach.

150. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and there are no defenses unique to Plaintiff. Plaintiff and her counsel are committed to prosecuting this action vigorously

on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

151.   **Risks of Prosecuting Separate Actions:** This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class. Furthermore, Defendant is still in possession of PII and PHI of the Plaintiff and the Class, and Defendant's systems are still vulnerable to attack— one standard of conduct is needed to ensure the future safety of PII and PHI in Defendant's possession.

152.   **Policies Generally Applicable to the Class:** This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Class and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiff.

153.   **Superiority:** This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendant. Even if members of the Class could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides

the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

154.    All members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent Notice of the Data Breach by Defendant.

## VI.   CAUSES OF ACTION

### COUNT I

### NEGLIGENCE and NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Class)

155.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

156.    Defendant requires its customers, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing its services.

157.    Defendant gathered and stored the PII and PHI of Plaintiff and Class Members as part of its business of soliciting its services to its clients and its clients' customers, which solicitations and services affect commerce.

158.    Plaintiff and Class Members entrusted Defendant with their PII and PHI with the understanding that Defendant would safeguard their information.

159.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the PII and PHI were wrongfully disclosed.

160.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to exercise due diligence in selecting IT vendors and to audit, monitor, and ensure the integrity of its vendor's systems and practices and to give prompt notice to those affected in the case of a data breach.

161.    Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

162.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

163.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected Plaintiff's and Class Members' PII and PHI.

164.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between 23andMe and Plaintiff and Class Members. That special relationship arose because Plaintiff and the Class entrusted 23andMe with their confidential PII and PHI, a necessary part of being customers of Defendant.

165.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII and PHI.

166.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

167.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' PII and PHI it was no longer required to retain pursuant to regulations.

168.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

169.    Defendant had and continues to have a duty to adequately disclose that the PII and PHI of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII and PHI by third parties.

170.    Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII and PHI. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

      a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII and PHI;

      b.    Failing to adequately monitor the security of their networks and systems;

      c.    Failing to audit, monitor, or ensure the integrity of its vendor's data security practices;

      d.    Allowing unauthorized access to Class Members' PII and PHI;

      e.    Failing to detect in a timely manner that Class Members' PII and PHI had been compromised;

      f.    Failing to remove former customers' PII and PHI it was no longer required to retain pursuant to regulations; and

      g.    Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

171.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

172.   Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

173.   Defendant's violations of Section 5 of the FTC Act and HIPAA constitute negligence *per se*.

174.   The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

175.   A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

176.   It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII and PHI would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches at large corporations.

177.   Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the PII and PHI were wrongfully disclosed.

178.   Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting PII and PHI stored on Defendant's systems.

179.   It was therefore foreseeable that the failure to adequately safeguard Class Members' PII and PHI would result in one or more types of injuries to Class Members.

180.   Plaintiff and the Class had no ability to protect their PII and PHI that was in, and possibly remains in, Defendant's possession.

181.   Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

182.   Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. See Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

183.   Defendant has admitted that the PII and PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

184.   But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII and PHI of Plaintiff and the Class would not have been compromised.

185.   There is a close causal connection between Defendant's failure to implement security measures to protect the PII and PHI of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII and PHI of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures.

186.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of PII and PHI; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and the Class Members' PII and PHI.

187.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

188.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession.

189.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

190.    Defendant's negligent conduct is ongoing, in that it still holds the PII and PHI of Plaintiff and Class Members in an unsafe and insecure manner.

191.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II

### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

192.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

193.    Plaintiff and Class Members were required to provide their PII and PHI to Defendant as a condition of receiving services from Defendant.

194.    Plaintiff and the Class entrusted their PII and PHI to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and

to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

195.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

196.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide their PII and PHI, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII and PHI, (e) reasonably safeguard and protect the PII and PHI of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

197.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

198.    Defendant solicited, offered, and invited Plaintiff and Class Members to provide their PII and PHI as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their PII and PHI to Defendant.

199.    In accepting the PII and PHI of Plaintiff and Class Members, Defendant understood and agreed that it was required to reasonably safeguard the PII and PHI from unauthorized access or disclosure.

200.    On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

201.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII and PHI would remain protected.

202.    Plaintiff and Class Members paid money and provided their PII and PHI to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

203.    Plaintiff and Class Members would not have entrusted their PII and PHI to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

204.    Plaintiff and Class Members would not have entrusted their PII and PHI to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

205.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

206.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

207.    As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

208.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

209.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT III**

**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

210.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

211.   This count is pleaded in the alternative to the Breach of Implied Contract claim above (Count II).

212.   Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they paid for services from Defendant and in doing so also provided Defendant with their PII and PHI. In exchange, Plaintiff and Class Members should have received from Defendant the services that were the subject of the transaction and should have had their PII and PHI protected with adequate data security.

213.   Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the PII and PHI entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' PII and PHI for business purposes.

214.   Defendant failed to secure Plaintiff's and Class Members' PII and PHI and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

215.   Defendant acquired the PII and PHI through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

216.   If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their PII and PHI, they would have never entrusted their Private Information with Defendant.

217.   Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

218.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of their PII and PHI; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

219.   Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

220.   Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT IV

### VIOLATION OF GENETIC INFORMATION PRIVACY ACT ("GIPA")
### 410 ILCS 513/1, *et seq.*
### (On Behalf of Plaintiff and the Illinois Subclass)

221.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

222.   Defendant is a corporation and, therefore, a "person" under 410 ILCS 513/10.

223.   GIPA provides a private right of action for violations. 410 ILCS 513/40(a).

224.   Plaintiff and the Illinois Subclass obtained "genetic test[s]" and received the results of such tests from Defendant.

CLASS ACTION COMPLAINT

225.    Defendant's disclosure of sensitive genetic information violates GIPA, which makes it unlawful for companies that collect genetic information to disclose such information without first obtaining written authorization.

226.    Plaintiff and the Illinois Subclass also provided accompanying personal identifying information, including their full names, email address, and/or home addresses (including age, birthday, and gender in some instances) to Defendant.

227.    Defendant disclosed and/or released Plaintiff's and the Class Members' genetic tests and/or information derived from their genetic tests (genetic information), along with their accompanying personal identifying information.

228.    Defendant did not receive any written authorization from Plaintiff or the members of the Illinois Subclass to disclose and/or release their genetic test results and information derived therefrom, including their personal identifying information, as mandated by 410 ILCS 513/15(a) and 410 ILCS 513/30(a)(2).

229.    The information obtained from Plaintiff and the Class by Defendant is the type of information protected by GIPA. 410 ILCS 513/10.

230.    Defendant's negligent practices led to disclosing its customers' genetic information to third parties without first obtaining consent.

231.    Defendant's negligence poses serious and irreversible privacy risks to its customers.

232.    Plaintiff and the Illinois Subclass members have been aggrieved by Defendant's violations of their statutorily protected rights to privacy in their genetic information as set forth in GIPA when Defendant disclosed and/or released their statutorily protected genetic information without their consent to unauthorized third parties.

233.    GIPA provides for statutory damages of $15,000 for each willful and/or reckless violation of GIPA or actual damages – whichever is greater – and, alternatively, damages of $2,500 for each negligent violation of GIPA or actual damages – whichever is greater; GIPA also

provides for reasonable attorney's fees and costs, including expert witness fees and other litigation expenses. 410 ILCS 513/40(a)(1)-(3).

## COUNT V

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT ("ICFA")
### 815 ILCS § 505, *et seq.*
### (On Behalf of Plaintiff and the Illinois Subclass)

234.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

235.    The ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and businesspersons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 41617 (2002); *Hill v. PS Illinois Trust*, 368 Ill.App.3d 310, 319 (1st Dist. 2006). It is to be liberally construed to effectuate its purpose. *Robinson*, 201 Ill.2d at 417.

236.    Recovery under ICFA may be had for unfair as well as deceptive conduct. *Robinson*, 201 Ill.2d at 417. In determining whether conduct is unfair under the Act, courts consider (1) whether the practice offends public policy; (2) whether it is oppressive, immoral, unethical, or unscrupulous; and (3) whether it causes consumers substantial injury. *Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 751 (N.D. Ill. 2011); *Dubey v. Public Storage, Inc.*, 395 Ill.App.3d 342, 354 (1st Dist. 2009). A practice can be unfair without meeting all three criteria. *Id.*

237.    A practice offends public policy "if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation." *Boyd*, 787 F. Supp. 2d at 752; *Beatty v. Accident Fund General Insurance Co.*, 2018 WL 3219936, at *12 (S.D. Ill. 2018). In other words, a plaintiff may base an ICFA claim on violations of other statutes or regulations, which alone do not allow for private enforcement. *Boyd*, 787 F. Supp. 2d at 752. Accordingly, "[v]iolations of agency directives … can be a hallmark of unfairness under ICFA." *Id.* at 753.

238.    Here, 23andMe's conduct is unfair under ICFA. First, 23andMe violated numerous regulations regarding HIPAA guidelines for safeguarding PHI and PII. In allowing the Data Breach to occur, 23andMe failed to: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the entity creates, receives, maintains, or transmits (45 C.F.R. § 164.306(a)(1)); (b) protect against any reasonably anticipated threats or hazards to the security or integrity of such information (45 C.F.R. § 164.306(a)(2)); (c) protect against any reasonably anticipated uses or disclosures of such information that are not permitted or required (45 C.F.R. § 164.306(a)(3)); (d) implement policies and procedures to prevent, detect, contain, and correct security violations (45 C.F.R. § 164.308(1)); (e) implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights (45 C.F.R. § 164.312(a)(1)); (f) have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information (45 C.F.R. § 164.530(c)(1)); and (g) mitigate, to the extent practicable, any harmful effect that is known of a use or disclosure of protected health information (45 C.F.R. § 164.530(f)). Accordingly, 23andMe's inability to safeguard Plaintiff's and Class Members' Personal Information offends public policy.

239.    Second, 23andMe's conduct against Plaintiff and the Class is oppressive in that even a request to delete data does not securely delete all data.[27] Plaintiff and the Class were assured by 23andMe that their Personal Information would be secured.

240.    And third, 23andMe's failure to safeguard Plaintiff's and Class Members' Personal Information and leaving it exposed to cybercriminals and other unauthorized actors constitutes a substantial injury in that Plaintiff and the Class will not only have to spend the remainder of their lives at greater risk for identity theft and fraud (having to constantly monitor for the same), but also live with the knowledge that their most intimate medical details are subject to public view.

---

[27] *See* https://www.23andme.com/legal/privacy/#other-things-to-know (last visited November 2, 2023).

241.    Finally, 23andMe violated FTC guidelines by failing to: promptly encrypt information stored on computer networks; understand vulnerabilities of its network; implement policies to correct security problems; use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach. These failures constitute unfair acts or practices, subjecting them to an ICFA claim. 15 U.S.C. § 45.

242.    In sum, 23andMe's numerous failures in safeguarding Plaintiff's and Class Members' Personal Information violates ICFA.

243.    Pursuant to Section 5 of the FTC Act, failure to protect Personal Information can constitute an unfair act or practice.

244.    The state of Illinois has also addressed the protection of Personal Information by enacting the Personal Information Protection Act ("PIPA"), 815 ILCS 530/1 et seq.

245.    PIPA requires "...implement[ation] and maintain[enance of] reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure" of PHI by data collectors. 815 ILCS 530/45.

246.    Failure to comply with PIPA constitutes an unlawful practice under ICFA. 815 ILCS § 530/20.

247.    As a result, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (a) the compromise, publication, theft, and /or unauthorized use of their Personal Information: (b) out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft and fraud; (c) lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud; (d) the continued risk to the publication of their Personal Information, which remains in the possession

of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect Personal Information in its possession; and (e) current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and the Class.

248. 23andMe's failure to safeguard Plaintiff's and Class Members' Personal Information in violation of HIPAA and FTC Act, PIPA and common violations were the direct and proximate cause of damages incurred by Plaintiff and the Class.

249. Accordingly, Plaintiff, on behalf of herself and the other members of the Classes, seeks compensatory damages for the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs as provided by 818 ILCS § 505/10(a) and, in the event that 23andMe's violations are found to be willful, punitive damages.[28]

## COUNT VI

### BAILMENT
### (On Behalf of Plaintiff and the Class)

250. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

251. Plaintiff's and Class Members' PII was delivered to Defendant. Defendant accepted delivery of Plaintiff's and Class Members' PII for the exclusive purpose of receiving personalized genetic reports on ancestry, traits, genetic health risks, carrier status, and pharmacogenetics.

252. In delivering PII to Defendant, Plaintiff and the Class Members intended and understood that Defendant would adequately safeguard such information.

253. By accepting possession of Plaintiff's and Class Members' PII, Defendant understood that Plaintiff and Class Members expected their PII to be adequately safeguarded and protected. Accordingly, a bailment was established for the mutual benefit of the parties.

---

[28] Pursuant to 815 ILCS 505/10a(d), Plaintiff is serving a copy of this Complaint on the Illinois Attorney General.

254.     When a bailment is created for the mutual benefit of the parties, the bailee (Defendant) is required to exercise ordinary care to protect the subject of the bailment from negligent loss, damage, or destruction.

255.     Defendant breached its duty of care by negligently failing to take appropriate measures to safeguard and protect Plaintiff's and Class Members' PII, resulting in the unlawful and unauthorized access to and misuse of Plaintiff's and Class Members' PII.

256.     Defendant further breached its duty to safeguard Plaintiff's and Class members' PII by failing to timely notify them that their PII had been compromised as a result of the Data Breach.

257.     Defendant failed to return, purge, or delete the PII belonging to Plaintiff and Class Members at the conclusion of the bailment and within the time limits allowed by law.

258.     As a direct and proximate result of Defendant's breach of its duties, Plaintiff and the Class suffered consequential damages that were reasonably foreseeable to Defendant, including but not limited to the damages set forth herein.

259.     As a direct and proximate result of Defendant's breach of its duty, Plaintiff's and Class members' PII that was entrusted to Defendant during the bailment (or deposit) was damaged and its value diminished.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff and the Class pray for judgment against Defendant as follows:

A.  For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class and Illinois Subclass, pursuant to Federal Rule of Civil Procedure 23;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII and PHI, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.  For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

D.  For an award of actual damages, compensatory damages, and nominal damages, in an amount to be determined, as allowable by law;

E.  For an award of punitive damages, as allowable by law;

F.  For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

G.  Pre- and post-judgment interest on any amounts awarded; and

H.  Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Complaint.

DATED: November 2, 2023

**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**

By:  */s/ M. Anderson Berry*
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
*aberry@justice4you.com*
*gharoutunian@justice4you.com*
*bjack@justice4you.com*

William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
-and-
212 W. Spring Valley Road
Richardson, Texas 75081
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
*wbf@federmanlaw.com*

-47-

*Pro Hac Vice Application to be submitted*

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT

# EXHIBIT 1

Dear Brianna,

We want to provide you with an important update and recommended actions.

## What happened?

We recently learned that certain profile information – which a customer creates and chooses to share with their genetic relatives in the DNA Relatives feature – was accessed from individual 23andMe.com accounts. This was done without the account users' authorization. We do not have any indication at this time that there has been a data security incident within our systems, or that 23andMe was the source of the account credentials used in these attacks.

While our investigation is ongoing, at this time we believe the threat actor was able to access certain accounts in instances where users employed identical login credentials - that is, usernames and passwords that were used on 23andMe.com were the same as those used on other websites that had been previously compromised or otherwise available.

If we learn that your data has been accessed without your authorization, we will contact you separately with more information.

## What is 23andMe doing about this?

After learning of suspicious activity, we immediately began an investigation and engaged the assistance of third-party forensic experts and notified law enforcement. Out of caution, we are also requiring that all customers reset their passwords.

Security and privacy are the highest priorities at 23andMe. We exceed industry data protection standards and have achieved three different ISO certifications to demonstrate the strength of our security program. We actively and routinely monitor and audit our systems to ensure that your data is protected. When we receive information through those processes or from other sources claiming customer data has been accessed by unauthorized individuals, we immediately investigate to validate whether this information is accurate. Beginning in 2019, we've offered and encouraged users to use multi-factor authentication (MFA), which provides an extra layer of security and can prevent bad

actors from accessing an account through recycled passwords.

## What can you do today?

We further encourage you to take additional action to keep your account and password secure. This includes the following steps:

- When you reset your password, confirm it is not easy to guess and not used for other accounts, meaning it's unique to your 23andMe account. Reset password here.
- Be sure to enable multi-factor authentification (MFA) on your 23andMe account: Adding 2-Step Verification To Your 23andMe Account.
- If you log in to 23andMe using your Google or Apple single sign-on, you will not be prompted for a password change, but we recommend you protect your Google or Apple account with MFA.

23andMe is here to support you. Please contact Customer Care at customercare@23andme.com if you need assistance. You can refer to our blog post for future updates.

- Be sure to enable multi-factor authentification (MFA) on your 23andMe account: [Adding 2-Step Verification To Your 23andMe Account](#).
- If you log in to 23andMe using your Google or Apple single sign-on, you will not be prompted for a password change, but we recommend you protect your Google or Apple account with MFA.

23andMe is here to support you. Please contact Customer Care at [customercare@23andme.com](mailto:customercare@23andme.com) if you need assistance. You can refer to our [blog post](#) for future updates.

The 23andMe Team

You are receiving this email because you are a customer of 23andMe.
For information about our privacy practices, see our [Privacy Statement](#).

©2007 - 2023 23andMe, Inc.
23andMe, Inc. 349 Oyster Point Blvd, South San Francisco, CA 94080, USA

# EXHIBIT 2

**From:** "23andMe"
<noreply@mailer.23andme.com>
**Subject: Important information about your account**
**Date:** October 24, 2023 at 6:11:26 PM CDT
**To:** ███████████████████████████

View email in your browser.

We are following up on an email that we sent earlier this month regarding our ongoing security investigation. We learned that certain profile information – which a customer creates and chooses to share with their genetic relatives in the DNA Relatives feature – was accessed from individual 23andMe.com accounts without the account users' authorization. While our investigation is ongoing, we believe the threat actor was able to access certain accounts in instances where the usernames and passwords that were used on 23andMe.com were the same as those used on other websites that had been previously compromised or otherwise available.

**How does this impact you?**

## How does this impact you?

After further review, we have identified your DNA Relatives profile as one that was impacted in this incident. Specifically, there was unauthorized access to one or more 23andMe accounts that were connected to you through DNA Relatives. As a result, the DNA Relatives profile information you provided in this feature was exposed to the threat actor. You can see a full list of the types of information that you may have included in your profile [here](). You can view what information is currently included in your DNA Relatives profile and make changes [here]().

Based on our investigation so far, we believe only your DNA Relatives profile attributes were exposed.

## What is 23andMe doing about this?

We are working with third-party forensic experts on this investigation, as well as federal law enforcement. We have also required all customers to reset their passwords.

Security and privacy are the highest priorities at 23andMe. We exceed industry data protection standards and

have achieved three different ISO certifications to demonstrate the strength of our security program. We actively and routinely monitor and audit our systems to ensure that your data is protected. When we receive information through those processes or from other sources claiming customer data has been accessed by unauthorized individuals, we immediately investigate to validate whether this information is accurate. Beginning in 2019, we've offered and encouraged users to use multi-factor authentication (MFA), which provides an extra layer of security and can prevent bad actors from accessing an account through recycled passwords.

**What should I do?**

We encourage you to take additional action to keep your account and password secure. This includes the following steps:

- Make sure your 23andMe password is not used for other accounts, meaning it's unique to your 23andMe account.
- Enable multi-factor authentification (MFA) on your 23andMe account: Adding 2-Step Verification To Your 23andMe Account

password secure. This includes the following steps:

- Make sure your 23andMe password is not used for other accounts, meaning it's unique to your 23andMe account.
- Enable multi-factor authentification (MFA) on your 23andMe account: [Adding 2-Step Verification To Your 23andMe Account](#).

23andMe is here to support you. Please contact Customer Care at [customercare@23andme.com](mailto:customercare@23andme.com) if you need assistance. You can refer to our [blog post](#) for future updates on this investigation.

You are receiving this email because you are a customer of 23andMe. For information about our privacy practices, see our Privacy Statement.

©2007 - 2023 23andMe, Inc.

23andMe, Inc. 349 Oyster Point Blvd, South San Francisco, CA 94080, USA